IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHELLY BISHOP, *et al*,  )
    Plaintiffs,  )
  )
  )
    vs  )    Civil Action No. 08-468
  )
AT&T CORPORATION,  )
    Defendant,  )

REPORT AND RECOMMENDATION

I. Recommendation

Presently before the court is named Plaintiffs', Shelly Bishop and Quintah Mann (collectively, "Bishop"), motion to conditionally certify this litigation against defendant AT&T Corporation ("AT&T") as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and to issue court-approved notice to all potential class members. Bishop also seeks discovery of the names and other identifying information of persons employed in AT&T call centers in sales, service and similar positions for the three years prior to an order granting conditional certification. It is respectfully recommended that Bishop's motion for conditional class certification and judicial notice (Docket No. 23) be granted as to customer service representatives employed at the AT&T call centers located in Pittsburgh, Pennsylvania, Lee's Summit, Missouri, El Paso, Texas, and Fairhaven, Massachusetts, three years prior to the date of

certification who were not fully compensated for time worked outside their scheduled tours.

II. Report

    A. Factual and Procedural History

Bishop worked as a customer service representative at AT&T's call center office located in Pittsburgh, Pennsylvania.[1] AT&T also maintains call centers in Lee's Summit, Missouri, Dallas, Texas, El Paso, Texas, Fairhaven, Massachusetts, Indianapolis, Indiana, Reynoldsville, Ohio, and Syracuse, New York, and the proposed class members are customer service representatives employed in these locations.[2] These call center employees field incoming calls from customers regarding service, equipment, and billing issues. They also sell AT&T equipment, services, and upgrades.

Customer service representatives are paid a base hourly wage, plus commissions and bonuses for the hours worked during their scheduled shift or "tour." Bishop alleges that she, and other similarly situated call center workers, were required to perform unpaid work before and after their regularly scheduled tours and during their meal and rest breaks. According to declarations and

---

[1] While Bishop is currently employed as a scanner in the Pittsburgh call center, she worked as a customer service representative during most of 2007.

[2] As of this date, there are approximately 183 opt-in plaintiffs.

2

supplemental declarations of approximately forty-five[3] AT&T call center workers from the Pennsylvania, Missouri, El Paso, Texas, and Massachusetts facilities, customer service representatives believed that they were paid only for the time they were logged into the AT&T phone system and that AT&T expected them to be ready to accept customer calls at the beginning of each tour.[4] The employees

---

[3] See Affidavit of David E. Schlesinger Relating to Plaintiffs' Supplemental Memorandum in Support of Conditional Certification and Notice, ¶¶ 6-9, November 24, 2008 (Docket No. 84-2).

[4] It remains a question of fact whether the scheduled tour begins when the employee logs onto the phone system or a few seconds before that time. By reference to deposition testimony from Norrie Coney, an employee at the Pittsburgh AT&T call center, and Kay Smith, described as a member of AT&T management, AT&T describes the log-in procedure as follows: "Once an employee's scheduled tour begins, the employee at the facilities at issue simply pushes in a four digit code to the telephone at their workstations. It only takes a few seconds for employees to log-in to the telephones at that start of their tours." Defendant's Brief in Opposition to Motion for Conditional Certification, at 8 (Docket No. 91). Review of the cited testimony, however, reveals that the start of the tour occurs once the employee logs onto the phone system. First, the citation to Mr. Coney's testimony on p. 45 is not helpful because it concerns the tracking of AT&T performance adherence and does not address when the scheduled tour begins. Later in the deposition, however, when Mr. Coney was asked when customer service representatives log on to their phones, he responded: "when your tour starts." Coney Dep., p. 99. More to the point, Ms. Smith, a member of AT&T's management team, confirmed that on-line service representatives are paid "based on the amount of time [they] spend on the phone." Smith Dep., p. 47. These responses indicate that the tour begins once the representative is logged into the phone system and not prior to the few seconds that the log-in procedure requires.

3

explain, however, that they must log onto and open up several computer software applications before their respective tours begin in order to adequately serve AT&T customers and that they are not paid for the portion of time it takes to accomplish those tasks. Conversely, employees allege that the time attributed to logging off their computers is likewise off the clock. There are also claims that employees are not compensated when they receive a call at the end of their tour, unless the call exceeds eight minutes and that they performed customer service-related work during meal and rest breaks for which they were not paid. Employees estimate that they perform between fifteen and sixty minutes of unpaid work per tour.

Employees contend that AT&T's management was aware that they were performing off-the-clock unpaid work as their respective supervisors observed them working before and after their scheduled tours and through their break times. Employees also attest that, since the filing of this lawsuit, AT&T prohibits employees from logging on to their computers prior to the beginning of their scheduled tours.

B. Conditional Certification

The FLSA mandates employers to pay employees at least the minimum wage for all hours worked and for overtime at a rate not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). Bishop has petitioned to proceed collectively against AT&T for unpaid compensation under 29 U.S.C. §216(b) which governs

class actions under the FLSA. In relevant part, this section authorizes collective actions against employers:

> by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. §216(b); Sperling v. Hoffman La-Roche,Inc., 862 F.2d 439, 444 (3d.Cir. 1988)(two requirements for §216(b)class action are that employees are similarly situated and each class member file individual consent).

The FLSA does not define the term "similarly situated" and neither the United States Supreme Court nor the Court of Appeals for the Third Circuit provide direct guidance on determining whether potential class members are similarly situated. In the absence of definitive precedent, district courts in the Third Circuit have developed a two-stage test. Kronick v. bebe Stores, No. 07-4514, 2008 WL 4546368, at *1 (D.N.J. October 2, 2008). During the initial notice stage, the court preliminarily determines whether the proposed class consists of similarly situated employees. Smith v. Sovereign Bancorp, No. 03-2420, 2003 WL 22701017 at *2 (E.D.Pa. November 13, 2003). Courts generally examine the pleadings and affidavits of the parties to decide whether the proposed class members are similarly situated, see Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563 at *1 (D.N.J. September 7, 2006), and utilize a "fairly lenient" standard in rendering such a

5

determination. Pontius v. Delta Financial Corporation, No. 04-1737, 2005 WL 6103189, *3 (W.D. Pa. June 24, 2005). See also De Asencio v. Tyson Foods, 130 F.Supp. 2d 660, 663 (E.D.Pa. 2001)(at first tier, plaintiffs have "fairly low burden" to prove similarly situated requirement). If the plaintiff meets the requisite showing, the class is conditionally certified for the purpose of notice and discovery. Armstrong v. Weichert Realtors, No. 05-3120, 2006 WL 1455781, at *2 (D.N.J. May 19, 2006).

In the second stage, after the court is more fully informed through discovery, the defendant may move to decertify the class and the court makes its final certification decision. Pontius, id. at *3. The present matter presents a motion for conditional certification and involves a stage one analysis.[5]

The district courts in this Circuit do not unanimously agree on the appropriate level of proof for a stage one determination that the potential class members are similarly situated. Some courts confer conditional certification and notice if a plaintiff advances an allegation that he and the proposed class members were victims of

---

[5] While some discovery has occurred in the present matter and assists in informing the conditional certification decision, it remains that the matter is appropriately analyzed under stage one jurisprudence. For this reason, Moss v. Crawford and Company, 201 F.R.D. 398(W.D.Pa. 2000) and Ruehl v. Viacom, 500 F.3d 375 (3d Cir. 2007), cases dissecting certain additional factors to evaluate the similarly situated issue on decertification motions, are not applicable.

a single employer policy. De Asencio, 130 F.Supp. 2d at 663; Goldman v. RadioShack Corp., No. 03-0032, 2003 WL 21250571, at *8 (E.D.Pa. April 16, 2003). Under this evidentiary approach, preliminary certification is granted upon a mere allegation that the putative class members were injured by a single policy of the defendant employer." Id.(conditional certification requires only lax showing of similarly situated). Others courts apply a more exacting, yet still relaxed, test requiring the plaintiffs to show a modest factual nexus between their situation and that of the proposed class members. Aquilino, id. at *2; Armstrong, id. at *2 (conditional certification issue determined under "modest factual showing" standard); Dreyer v. Altchem Enviornmental Services, Inc., No. 06-2393, 2006 WL 3676013, at*2 (D.N.J. December 12, 2006)(plaintiffs must show factual nexus between their situation and situations of other employees).

In Smith, the district court observed that the mere allegation test contradicted the design of the FLSA's opt-in requirement to limit the size of collective actions, and chose to adopt the modest factual showing approach. Id. at *2-3. This evidentiary standard requires a plaintiff to show "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.' " Aquilino, id. at *1(citation omitted). The Smith court described this standard of proof, as a "more stringent-

7

although nonetheless lenient-test that requires the plaintiff to make a 'modest factual showing' that the similarly situated requirement is satisfied." Id. at *2 (citation omitted).

Given that discovery has progressed in the instant matter, it is appropriate to evaluate the conditional certification issue under the modest factual showing test. At this stage, the merits of the plaintiffs' claims are not addressed, but they must demonstrate some evidence, "beyond mere speculation," that AT&T's alleged policy affected other employees. Parker v. NutriSystem, Inc., No. 08-1508, 2008 WL 4399023, at *2 (E.D.Pa. September 26, 2008). While conditional certification is not automatic under this standard, it remains an "extremely lenient standard." Id.

Bishop asserts that conditional certification is appropriate because she and the other call center customer service employees were not paid for some pre-tour and post-tour work and were denied meal and rest breaks to which they were entitled. Bishop contends that she is similarly situated to the putative class members by reference to the declarations from forty-five other employees and the deposition testimony describing the necessity to perform certain work-related duties off-the-clock in order to conform to AT&T's performance expectations.

AT&T opposes the motion for conditional certification on two bases. It first argues that Bishop has failed to make the requisite showing of a common AT&T corporate policy that violates

8

the FLSA. AT&T's other objection is that Bishop has not shown that she is similarly situated to the proposed class members.

1. <u>Evidence of Company Policy</u>

AT&T identifies the policy at issue as the manner in which it records time worked and ascertains payment for overtime. AT&T then suggests that the differing procedures for timekeeping and overtime reporting at the four call centers abrogate a conclusion that a single corporate plan existed to deprive employees of earned wages. Responding to Bishop's position that employees were required to be computer-ready by the start of their tours, AT&T claims that no written policy nor spoken directive demanded such off-the-clock preparation and that the employees' understanding as to the company's expectations in this regard were based upon subjective idiosyncratic beliefs. Finally, AT&T faults the employees because they never notified their managers or supervisors that they were performing unpaid work.

While AT&T correctly sketches the outer contours of the corporate policy at issue, describing the various mechanics of timekeeping and overtime payment among the four call centers does not respond to the employees' specific complaint that AT&T's expectations concerning employee performance required off-the-clock work. Enumerating the specifics of how each call center accounts for employee work hours does not counter an allegation of a common policy of denying payment for such hours.

AT&T's next offers that any understanding that off-the-clock work was required was premised on employees' individual interpretations of their job demands and not reasoned by any AT&T policy, written or otherwise. This proposition, however, is belied by numerous declarations from the four call center workers who claim to be victimized by the contradictory interplay between AT&T's expectation of readiness at the start of the employees' tour and when AT&T begins to calculate the hours worked by those employees.[6]

---

[6] In this way, and others, the instant matter is distinguished from <u>Brooks v. BellSouth Telecommunications, Inc.</u>, No. 07-3054 (N.D. Ga. filed Feb. 10, 2009). In <u>Brooks</u>, the defendant submitted 74 employee declarations contradicting the plaintiffs' claim that they were required to perform pre-tour and post-tour uncompensated work.

Additionally, the court in <u>Brooks</u> granted the defendant's motion to strike paragraph five of the plaintiffs' declarations that described BellSouth's policy of paying employees for only the time they were logged into the company's phone system. The court noted that certain plaintiffs' supplemental declarations did not contest the company's position that employees were not paid according to the time they were logged into the phone system and, for this reason, struck paragraph five of the original declarations because it was not based on the declarant's personal knowledge. Citing the resulting inconsistency on the theories of recovery after the omission of paragraph five from the declarations, the court determined that plaintiffs "failed to produce a factual showing of the commonality of claims involving employees logging into their computer prior to the beginning of their [t]our." <u>Id.</u> at 19. Here, the evidence that AT&T customer service representatives were paid only for the time of their scheduled tour has not been contradicted by other customer service employees, nor has it been stricken from consideration.

Finally, AT&T points to the admissions of most of the declarants that they did not notify their respective managers that they were working off-the-clock. Nonetheless, the declarants aver that the supervisors were aware of the practice. Such awareness can reasonably be inferred at this preliminary stage.

For these reasons, Bishop has demonstrated, for the purpose of conditional certification, that she and the proposed class members were victims of a single employer policy to deny them compensation for hours worked.

2. Similarly Situated

As noted, the Third Circuit has not announced a test to determine whether plaintiffs are similarly situated, but in Lockhart v. Westinghouse Credit Corporation, 879 F.2d 43 (1989)(overruled on other grounds), it quoted with approval the three factors utilized in Plummer v. General Electric Co., 93 F.R.D. 311, 312 (E.D.Pa.1981) to analyze the question. Plummer instructs courts to examine whether the proposed plaintiffs are : (1) employed in the same corporate department, division and location; (2) advancing similar claims; and (3) seeking substantially the same form of relief. Id.; Lockhart, 879 F.2d at 51.

AT&T first disputes that Bishop and the putative class members are similarly situated because they work in different

11

geographic locations and for different AT&T divisions with distinct operational procedures. However, the court in Lockhart downplayed the importance of the geographic location factor, noting that Plummer "did not rest upon the fact that [plaintiffs] worked in the same department, the same division and in the same location." Lockhart, id. at 52 n. 10. Rather, the Third Circuit balanced the Plummer factors and found that there was "sufficient homogeneity" among plaintiffs claiming the same unlawful conduct and seeking the same relief. Id. See also Mershon v. Elastic Stop Nut Division of Harvard Industries, Inc., No. 87-1319, 1990 WL 484152 at *6 (D.N.J. March 23, 1990)(Lockhart expanded Plummer by holding that fact that class members worked in different locations did not invalidate collective action).

Considering the de-emphasis of the physical location factor, the geographic diversity among the plaintiffs does not argue against conditional certification here, particularly when AT&T does not point to any distinction among the various facilities critical to the common complaint that the call center workers were required to perform off-the-clock work. However, AT&T correctly states that only employees from the four call centers where some evidence shows that the policy of uncompensated off-the-clock work is in effect are eligible for inclusion in the class.

The next inquiry is whether Bishop and the proposed class members are raising similar claims. As previously described,

12

Bishop alleges that she, and other call center workers, were required to perform unpaid work before and after their regularly scheduled tours and during their meal and rest breaks occasioned by the job requirement that they be ready to accept customer calls at the beginning of each tour.

Although AT&T identifies differences in the job functions of some potential opt-in plaintiffs, particularly that some employees have duties beyond handling customer calls, it does not dispute the basic claim that call center employees believed it necessary to be logged into their computers at the beginning of their scheduled tours to meet AT&T's performance expectations. Bishop has already demonstrated, under the modest factual showing standard, that AT&T's corporate policy that workers be "caller-ready" at the start of their scheduled tour commonly victimized call center workers. Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete.

Accordingly, based upon the numerous affidavits from employees from the four call centers, Bishop has shown that the proposed class members are pursuing a similar claim related to AT&T's failure to pay them for off-the-clock-mandated work.

Finally, as to the identity of the relief sought, Bishop and the proposed class members all seek economic relief to recoup lost wages and interest. Thus, balancing the factors announced in

13

Lockhart, Bishop has satisfied the burden to establish that she and the prospective class are similarly situated.[7]

   C.  Judicial Notice

Bishop urges that judicial notice is warranted in this case because of statute of limitations concerns and the size and geographic scope of the putative class. Bishop has submitted a proposed notice which she contends provides prospective class members with accurate and timely notice concerning the pendency of the collective action. AT&T responds that the notice is deficient because it fails to inform putative members of their option to retain other counsel or bring an individual lawsuit and because it does not advise putative members that, if they choose to opt-in, they must be available to give deposition and/or court testimony.

The proposed notice informs prospective class members that if they opt-in to the litigation, they will be represented by plaintiffs' counsel, counsel of record in this action. The notice likewise explains that if employees decide not to join the action, they are free to proceed with an individual action. Therefore, the notice properly explains that putative class members have a right

---

[7] AT&T also argues that conditional certification is inappropriate because the plaintiffs' prospective claims/defenses are too individualized to be litigated collectively, and also that fairness and manageability considerations argue against collective treatment. These factors, however, are relevant to determination of a stage two decertification issue after discovery has closed.

14

to choose individual counsel. However, as Bishop acknowledges, the notice must be amended to inform prospective members regarding the prospect of providing deposition and/or court testimony.

Bishop has also requested the court to order AT&T to produce a list of prospective class members, including employee telephone numbers and Social Security numbers. AT&T objects to the production of this information, pointing to the Rules of Professional Responsibility edict against direct solicitation of clients. Bishop assures the telephone numbers are used only to run reverse directory checks for putative members with outdated addresses and not to make calls to prospective class members. Bishop explains that the Social Security numbers likewise assist in updating information and are also used to verify a potential opt-in's employment with AT&T, but represents that production of only the last four digits of the Social Security number is necessary.

As to these discovery concerns, a protective order limiting the use of home telephone numbers as an address verification device addresses AT&T's concern regarding dissemination of this information. Bishop, however, has not demonstrated that production of even partial Social Security numbers is necessary, and AT&T will not be required to disclose that confidential information.

D. Conclusion

For the reasons stated, the court recommends that

Bishop's motion for conditional certification and judicial notice (Docket No. 23), conforming to the above-mentioned modifications, be granted.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Respectfully submitted,

<u>s/Robert C. Mitchell</u>
Robert C. Mitchell
United States Magistrate Judge

Entered: February 19, 2009